FILED
06/11/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 14, 2024

**STATE OF TENNESSEE v. MYKHAH CALVIN SIMON**

**Appeal from the Circuit Court for Bedford County**
**No. 22-CR-19435    Forest A. Durard, Jr., Judge**

———————————————

**No. M2023-00814-CCA-R3-CD**

———————————————

The Defendant, Mykhah Calvin Simon, appeals his convictions for possession of one-half gram or more of methamphetamine with intent to sell and deliver, possession of less than one-half gram of fentanyl with intent to sell and deliver, and driving on a suspended license, second offense. On appeal, the Defendant argues that (1) the evidence was insufficient to sustain his convictions and (2) his sentence was excessive. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

KYLE A. HIXSON, J., delivered the opinion of the court, in which J. ROSS DYER and TOM GREENHOLTZ, JJ., joined.

Michael J. Collins, Assistant Public Defender, Lewisburg, Tennessee, for the appellant, Mykhah Calvin Simon.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone, Assistant Attorney General; Robert J. Carter, District Attorney General; and Michael Randles and Lisa Zavogiannis, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**I.    FACTUAL AND PROCEDURAL HISTORY**

The Defendant was arrested for drug offenses following a traffic stop in Shelbyville on May 3, 2021. In May 2022, a Bedford County grand jury indicted the Defendant for possession of one-half gram or more of methamphetamine with intent to sell (count 1), possession of one-half gram or more of methamphetamine with intent to deliver (count 2),

possession of less than one-half gram of fentanyl with intent to sell (count 3), possession of less than one-half gram of fentanyl with intent to deliver (count 4), and driving on a suspended license, second offense (count 5). *See* Tenn. Code Ann. §§ 39-17-417, -434; 55-50-504. A jury trial was held on February 9 and 10, 2023.

## A. Trial

In the afternoon of May 3, 2021, Detectives Cody Swift and Nathan Everhart from the Shelbyville Police Department ("SPD") were riding together in an unmarked vehicle when they saw the Defendant driving a black SUV. Both detectives were familiar with the Defendant and knew that his driver's license was suspended at that time. After verifying the suspended status of the Defendant's license, the detectives followed the Defendant into a supermarket parking lot. They activated their blue lights after the Defendant had parked in a parking spot.

Detective Swift approached the Defendant on the driver's side of the SUV while Detective Everhart approached a woman sitting on the passenger's side. Detective Swift informed the Defendant, who was driving the SUV, that they had stopped him because he was driving on a suspended license. Detective Swift then asked the Defendant to step out of the SUV. According to Detective Swift, after the Defendant stepped out of the car, he "tensed up like he might get ready to run." The Defendant also reached "around his waistband or [] pocket" and threw a package onto the ground.

Detective Everhart, who was on the passenger's side of the SUV, "could see through the window" and saw that the "[D]efendant twisted[,] . . . as if he was going to try to get free and run." At that point, Detective Everhart came around to the driver's side of the vehicle and threatened to tase the Defendant if he did not comply. The Defendant immediately complied, and the detectives handcuffed him. The woman who was riding with the Defendant possessed marijuana and was also arrested. The detectives called for two patrol units to transport the Defendant and the passenger because the detectives' vehicle was not equipped for transportation.

Detective Swift examined the package that the Defendant had thrown onto the ground. Detective Swift noted that it looked like a bag of crystal methamphetamine at first glance. Based on the package and the marijuana recovered from the passenger, the detectives decided to search the SUV. They told the Defendant that they were going to search the vehicle, and the Defendant expressed concern for a laptop that was inside a backpack in the back seat of the SUV. The detectives searched the backpack and found

the laptop, a bong, digital scales, and several small "zip-top" bags that were approximately "an inch square."

Detective Everhart placed the Defendant in the back of a patrol vehicle and informed him of his rights. The Defendant told Detective Everhart that he had purchased the drugs, but he did not say from where he purchased them. According to Detective Everhart, the Defendant stated that he intended to "get high and mess around with that female." The detectives secured the SUV and seized the package, bong, scales, and small bags. They did not seize the backpack or the laptop.

Once the detectives returned to the police department, they reexamined the package. Inside were separate bags containing a crystalline substance and a powdery substance. The detectives sent the substances recovered from the bag to the Tennessee Bureau of Investigation ("TBI") Crime Laboratory for testing. According to TBI forensic scientist John Scott, one bag of the crystalline substance weighed 3.41 grams while another weighed 1.81 grams. The powdery substance weighed 0.21 grams. Testing revealed a total of 5.22 grams of methamphetamine and 0.21 grams of fentanyl inside the bags that the Defendant had thrown onto the ground.

Shane George, an SPD officer and the Director of the 17th Judicial District Drug Task Force, testified as follows:

> [J]ust 5 grams of crystal meth, in this area that is a substantial amount. When I say this area, this is [a] rural'ish community. It is not a metropolitan area where the cartel is deeply embedded and people are walking around with pounds of stuff. In this area 5 grams is a substantial amount of crystal meth. Initially the first thing we would think [is] this person is probably a dealer, but we would push forward to try to obtain more evidence of that so that we have evidence to bolster that assumption.

Officer George further testified that the scales and small bags found inside the SUV indicated that the Defendant was "breaking down the 5 grams in[]to smaller amounts for the purpose of redistribution or resale." He also stated that two-tenths of a gram of fentanyl would amount to approximately 200 doses and that 5.22 grams of methamphetamine would provide approximately fifty doses. He also stated,

> Almost without fail you will run into a length of straw, plastic straw they cut to use to snort the drug or have a glass pipe, normally it . . . has a bowl at the

- 3 -

end of it and a hole in the side of it they will use to smoke it with. . . . Almost without fail you will see the user in possession of items like that.

Thereupon, the State rested. The Defendant elected not to testify and did not present further proof. The jury convicted the Defendant of the charged offenses.

## B.     Sentencing

A sentencing hearing ensued on May 1, 2023. A presentence investigation report was admitted at the sentencing hearing, and that report revealed that the Defendant had the following criminal convictions: resisting a stop, frisk, halt, or arrest, convicted on July 26, 2017; forgery up to $1,000, convicted on July 21, 2017; failure to appear, convicted on July 26, 2017; theft of property from $10,000 to $60,000, convicted on July 21, 2017; evading arrest, convicted on July 26, 2017; driving on a suspended license, convicted on July 26, 2017; two counts of unlawful possession of drug paraphernalia, convicted on October 4, 2016, and September 22, 2015; casual exchange, convicted on October 4, 2016; and assault, convicted on March 1, 2016. The report showed that the Defendant had other pending charges for which no disposition was listed. The report also indicated that the Defendant had five disciplinary charges levied against him during his time incarcerated in the Tennessee Department of Correction ("TDOC"). After argument, the State requested an effective sentence of eighteen years' imprisonment, and the Defendant requested a sentence "closer to the eight-year end."

The Defendant testified during the sentencing hearing, expressing his desire to receive drug treatment. When asked why the trial court should give the Defendant treatment, he responded, "Because I just—I been in here time and time [again,] and after each time I get out[,] I go back to the same things."

In sentencing the Defendant, the trial court applied enhancement factors (1)—the Defendant had a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and (8)—the Defendant failed to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(1), (8). The trial court did not find any mitigating factors applicable to the Defendant. *See id.* § -113.

The trial court also determined that the Defendant's criminal history was extensive such that consecutive sentences applied under Tennessee Code Annotated section 40-35-115(b)(2). The trial court reasoned,

- 4 -

[I]n this particular situation we are right there at the cusp where [] we have extensive criminal history, that is the second factor on [section] 115. I think we are right there where the Court could rule either way and perhaps be okay. . . . I think in this particular case that stacking the 10 and the 6 for a 16 year sentence is appropriate[.]

The trial court also stated that there were two prior felonies on the Defendant's criminal history and stated that it was "convinced" that consecutive sentencing was appropriate.

In considering probation, the trial court referenced the Defendant's potential for rehabilitation and stated, "[The Defendant's] past history does not bode well for [him] in that situation. He has kind of repeatedly got into trouble either while on probation or while something was pending." The trial court also concluded that based upon the Defendant's criminal history, it did not reasonably appear that the Defendant could abide by the conditions of probation. Additionally, the trial court noted, "He just kind of graduated from misdemeanors into felonies." Ultimately, the trial court found that the Defendant was not a suitable candidate for alternative sentencing.

The trial court sentenced the Defendant to ten years' imprisonment on counts 1 and 2 and to six years' imprisonment on counts 3 and 4. The trial court merged count 1 with count 2 and count 3 with count 4 and ordered the merged counts to run consecutively. The Defendant received a concurrent sentence of eleven months and twenty-nine days on count 5. In sum, the Defendant was sentenced to an effective sentence of sixteen years' imprisonment. After an unsuccessful motion for new trial, this timely appeal followed.

## II.    ANALYSIS

### A.    Sufficiency of the Evidence

The Defendant argues that the evidence was insufficient to support his convictions. Specifically, the Defendant contends that the evidence showed he was merely a user of the substances and had no intent to sell or deliver them. The State avers that the jury's verdicts rejected the assertion that the Defendant was a user and not a dealer. We agree with the State.

The United States Constitution prohibits the states from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. A state shall not deprive a criminal defendant of his liberty "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."

*In re Winship*, 397 U.S. 358, 364 (1970). In determining whether a state has met this burden following a finding of guilt, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because a guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the jury's verdict. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). If a convicted defendant makes this showing, the finding of guilt shall be set aside. Tenn. R. App. P. 13(e).

"Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). Appellate courts do not "reweigh or reevaluate the evidence." *Id.* (citing *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978)). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Therefore, on appellate review, "the State is entitled to the strongest legitimate view of the trial evidence and all reasonable or legitimate inferences which may be drawn therefrom." *Cabbage*, 571 S.W.2d at 835.

Under Tennessee law, it "may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." Tenn. Code Ann. § 39-17-419. We have interpreted this language to permit a "jury to draw an inference of intent to sell or deliver when the amount of the controlled substance and other relevant facts surrounding the arrest are considered *together*." *State v. Belew*, 348 S.W.3d 186, 191 (Tenn. Crim. App. 2005). "Proof of intent usually consists of circumstantial evidence and the inferences that can be reasonably drawn from that evidence." *Id.* at 190 (first citing *Hall v. State*, 490 S.W.2d 495, 496 (Tenn. 1973); and then citing *State v. Benson*, No. M2003-02127-CCA-R3-CD, 2004 WL 2266801, at *2 (Tenn. Crim. App. Oct. 8, 2004)).

In arguing that the evidence was insufficient, the Defendant points to his statement that he intended to "get high and mess around with that female." The Defendant does not contest that he possessed the substances, but he argues that the quantity of substance he possessed could have been possessed by a simple user. Moreover, the Defendant argues that the small bags were the only evidence showing that the Defendant possessed the substances with the intent to sell or deliver. However, scales were also found in the SUV inside the Defendant's backpack. Officer George testified that two-tenths of a gram of

fentanyl would amount to approximately 200 doses and that 5.22 grams of methamphetamine would amount to approximately fifty. Officer George testified that the quantity of the substances, coupled with the presence of scales, small bags, and lack of evidence of personal use—i.e., a plastic straw, a glass pipe with a "bowl at the end of it and a hole in the side of it," etc.—indicated that the Defendant had the intent to sell or deliver the methamphetamine and fentanyl.

Tennessee courts, including our supreme court, have held that when a search yields digital scales and plastic sandwich bags alongside a relatively large amount of contraband, it "clearly demonstrate[s] that the defendant had an *intent* to *sell* the controlled substance." *State v. Ross*, 49 S.W.3d 833, 845 (Tenn. 2001) (first citing Tenn. Code Ann. § 39-17-419 (1997); and then citing *State v. Chearis*, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999)). Viewing the evidence in the light most favorable to the State, the evidence sufficiently supports the Defendant's drug convictions.[1]

## B.    Sentencing

The Defendant argues that the trial court's sentencing decision was excessive and contrary to law because the trial court imposed consecutive sentences after erroneously finding that the Defendant had an extensive criminal history. The Defendant asserts that the trial court did not make an adequate finding under Tennessee Code Annotated section 40-35-115 when it stated, "[T]his particular situation [is] right there at the cusp where [we do] have extensive criminal history." The State contends that the trial court did not abuse its discretion in making its sentencing decision and that the factors of *State v. Perry*, 656 S.W.3d 116 (Tenn. 2022), support the imposition of consecutive sentences. We agree with the State.

When an accused challenges the length of a sentence or manner of service, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (applying the *Bise* standard to "questions related to probation or any other alternative sentence"). The *Bise* standard of review also applies to consecutive sentencing determinations. *State v. Pollard*, 432 S.W.3d 851, 860-61 (Tenn. 2013). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous.

---

[1] The Defendant has waived any sufficiency challenge to his driving on a suspended license conviction for failing to provide argument, citation to authorities, and appropriate references to the record. Tenn. Ct. Crim. App. R. 10(b).

Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001).

The Sentencing Reform Act was enacted in order "to promote justice" and "assure fair and consistent treatment of all defendants by eliminating unjustified disparity in sentencing and providing a fair sense of predictability of the criminal law and its sanctions." Tenn. Code Ann. § 40-35-102. In determining the proper sentence, the trial court must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the Administrative Office of the Courts ("AOC") as to Tennessee sentencing practices for similar offenses; (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. Tenn. Code Ann. § 40-35-210(b).

A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of the eight categories in Tennessee Code Annotated section 40-35-115(b). "Any one of these grounds is a sufficient basis for the imposition of consecutive sentences." *Pollard*, 432 S.W.3d at 862 (citing *State v. Dickson*, 413 S.W.3d 735, 748 (Tenn. 2013)). This court must give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the [eight] grounds listed in Tennessee Code Annotated section 40-35-115(b)." *Id.* at 861. "So long as a trial court properly articulates reasons for ordering consecutive sentences, thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Id.* at 862 (citing Tenn. R. Crim. P. 32(c)(1); *Bise*, 380 S.W.3d at 705). When imposing consecutive sentences, the court must still consider the general sentencing principles that each sentence imposed shall be "justly deserved in relation to the seriousness of the offense," "no greater than that deserved for the offense committed," and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. §§ 40-35-102(1), -103(2), -103(4); *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002).

Our supreme court provided six factors to consider in determining whether an offender has an extensive record of criminal activity. *Perry*, 656 S.W.3d at 128-29. Courts should look to the following non-exclusive considerations in determining whether a

defendant's criminal record is "extensive" under Tennessee Code Annotated section 40-35-115(b)(2):

(1)     The amount of criminal activity, often the number of convictions, both currently before the trial court for sentencing and prior convictions or activity;

(2)     The time span over which the criminal activity occurred;

(3)     The frequency of criminal activity within that time span;

(4)     The geographic span over which the criminal activity occurred;

(5)     Multiplicity of victims of the criminal activity; and

(6)     Any other fact about the defendant or circumstance surrounding the criminal activity or convictions, present or prior, that informs the determination of whether an offender's record of criminal activity was considerable or large in amount, time, space, or scope.

*Id.* at 129 (footnotes omitted).  A defendant need not have prior criminal convictions or activity apart from that for which the defendant is being sentenced to qualify as an offender whose record of criminal activity is extensive. *Id*. at 131.  But prior convictions or criminal activity "may demonstrate 'a consistent pattern of operating outside the confines of lawful behavior' and provide some stronger measure of justification for finding that a defendant is an offender whose record of criminal activity is extensive." *Id*. (quoting *Dickson*, 413 S.W.3d at 748).

Here, the trial court did not explicitly address each of the *Perry* factors at sentencing, but it followed the appropriate sentencing procedure, identified facts related to the amount and scope of the Defendant's criminal activity, and stated its reason for imposing consecutive sentencing.  The trial court has, thus, provided an adequate basis for meaningful appellate review.  Therefore, the trial court's findings were sufficient to warrant the presumption of reasonableness, and we must uphold the trial court's decision absent an abuse of discretion. *See Perry*, 656 S.W.3d at 133 (holding that the trial court's failure to specifically address the time span and frequency of the criminal activity did not negate the presumption of reasonableness when the trial court followed "appropriate sentencing procedure," identified multiple facts related to the amount and scope of the defendant's criminal activity, and stated its reasons for ordering partial consecutive

sentencing, thus providing a basis for meaningful appellate review); *see also State v. Brown*, No. E2022-00577-CCA-R3-CD, 2023 WL 5498983, at *6 (Tenn. Crim. App. Aug. 25, 2023).

As to the first factor, the trial court noted that the Defendant's history included two prior felonies. The presentence report listed ten convictions in addition to five disciplinary charges relating to the Defendant's time in the TDOC. Second, the Defendant's previous criminal activity began in 2015 when the Defendant was only eighteen years old. Third, the criminal activity within the time span provided by the presentence report was so frequent that, at most, only a few months separated the different offense dates. In some instances, only days separated the offenses. Fourth, the Defendant's previous criminal activity mostly occurred in Bedford County or the surrounding area. Fifth, some of the Defendant's previous crimes were not victimless, such as his convictions for assault, forgery, and theft of property. Sixth, the trial court noted in considering probation that "[the Defendant's] past history does not bode well for [him] . . . . He has kind of repeatedly got into trouble either while on probation or while something was pending." The trial court further observed that the Defendant had "just kind of graduated from misdemeanors into felonies."

Upon consideration of the *Perry* factors, the trial court did not err in determining that the Defendant had an extensive criminal history and, therefore, did not abuse its discretion in imposing consecutive sentences based on that determination. The Defendant is not entitled to relief on this issue.

### III. CONCLUSION

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
KYLE A. HIXSON, JUDGE